The appellant, David Lee Briggs, Jr., was indicted by a Houston County grand jury for arson in the first degree, in violation of § 13A-7-41, Code of Alabama (1975). The appellant was found guilty in a jury trial of the offense charged, and was sentenced to a term of ten years' imprisonment and was ordered to pay restitution in the amount of $15,393.43. Seven issues are raised in this appeal of the appellant's conviction.
 I.
The appellant first contends that the trial court erred by admitting into evidence State's Exhibits Nos. 1 and 2, which were tape recordings made of telephone calls between the appellant and his estranged wife, Nancy Briggs, who was the victim of the arson. In support of his argument, the appellant contends that the State failed to establish a proper chain of *Page 157 
custody for the tapes, and also failed to lay the proper predicate for their admission. This Court does not agree.
The record indicates that, after her home was burned on March 15, 1987, Ms. Briggs met with Tommy Shirley, the owner of Special Investigation and Consultant Services. Shirley was hired by Auto Owners Insurance Company to investigate the arson of Ms. Briggs's home. Shirley testified that he gave Ms. Briggs a telephone answering machine containing a recording device, and that he also provided her with several blank tapes. Shirley likewise testified that he had shown Ms. Briggs how to use the answering machine and recorder.
Ms. Briggs testified that she knew the appellant's voice, and that she received several calls from him at her home in mid-April 1987. Ms. Briggs testified that she would operate the recorder each time that she received one of these calls. Ms. Briggs further stated that, during the last week of April 1987, she notified Shirley that she had two tapes which contained telephone conversations between the appellant and her and that Shirley took possession of the tapes a short time later.
The record indicates that on May 1, 1987, Shirley met with Shelby Womack of the Dothan Fire Department at the district attorney's office to listen to the two tapes. Shirley testified that, between the time he received the tapes from Ms. Briggs and this meeting, the tapes remained in his briefcase, which he always kept with him. Shirley further testified that he did not alter or change the tapes in any way.
After hearing the tapes, Womack and Shirley met Ms. Briggs at her place of business and gave her the tapes. Ms. Briggs wrote her name on the tapes, and immediately returned them to Womack, who kept the tapes in his possession and control until they were transcribed by his secretary. After the transcription, the tapes were returned to Womack, who retained custody of them until the appellant's trial. Womack also testified that he had not marked, altered, or changed the tapes in any way. Ms. Briggs likewise testified that she did not alter the tapes and did not arrange for anyone to portray the appellant's voice or pretend to be the appellant.
The tapes, which contained numerous admissions by the appellant, were then played to the jury, over the appellant's objection. After the tapes were played, Ms. Briggs testified that the voices heard on them belonged to the appellant and her and that the content of the recordings consisted of the telephone conversations between the two. During the hearing on the appellant's motion in limine held prior to his trial, Ms. Briggs testified that the tapes had not been erased or altered in any other manner since she relinquished possession of them.
In Voudire v. State, 387 So.2d 248, 256 (Ala.Cr.App. 1980), this Court held that, before a sound recording may be properly admissible as evidence, the following must be shown:
 " '(1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) a showing that the testimony elicited was voluntarily made without any kind of inducement.' 58 A.L.R.2d at 1027-8."
Id. See also, Walker v. State, 416 So.2d 1083, 1094
(Ala.Cr.App. 1982).
In this Court's opinion, each of the requirements set forth in Voudire, supra, has been satisfied in the present case. Although the appellant argues that the State failed to show a proper chain of custody, this argument finds little support in the evidence contained in the record. Moreover, Ms. Briggs testified that the tapes had not been altered or changed in any way since she relinquished possession of them.
 "The purpose for requiring that a chain of custody be established is to show a reasonable probability that there has been no tampering with an item of evidence. Fleming v. State, 470 So.2d 1343 (Ala.Cr.App. 1985); Gwin v. State, 425 So.2d 500 (Ala.Cr.App. 1982), writ quashed, Ex parte Gwin, 425 So.2d 510 *Page 158 
(Ala. 1983). 'In passing upon the admissibility of such evidence, "the trial judge should consider the nature of the article and the circumstances surrounding its presentation and custody," and permit its introduction where continuity of possession is "sufficiently established." ' Oliver v. State, 479 So.2d 1385, 1390 (Ala.Cr.App. 1985), quoting Washington v. State, 339 So.2d 611, 615 (Ala.Cr.App.), cert. denied, 339 So.2d 616
(Ala. 1976). ' "The evidence need not negate the most remote possibility of substitution, alteration of tampering with the evidence, but rather must prove to a reasonable probability that the item is the same as, and not substantially different from the object as it existed at the beginning of the chain." ' (Emphasis added.) Fleming v. State, supra, at 1346, quoting Slaughter v. State, 411 So.2d 819, 822 (Ala.Cr.App. 1981)."
Armstrong v. State, 516 So.2d 806, 811 (Ala.Cr.App. 1986). See also Hiett v. State, 548 So.2d 483 (Ala.Cr.App. 1986).
The appellant further argues that the trial court erred in admitting the tapes into evidence because Ms. Briggs did not "log" the calls allegedly made by him, and was therefore unable to state the dates and times the calls were made, or the number of such calls. The appellant has failed, however, to cite any authority requiring such information for a sound recording to be admissible. Moreover, the testimony of Ms. Briggs indicated that the calls were received between April 10, 1987, and May 1, 1987. In our opinion, this, together with the other evidence offered, is sufficient to establish the authenticity of the tapes.
 II.
The appellant argues that the trial court erred in admitting evidence of two earlier fires allegedly set by him in February 1987. The appellant argues that he was never charged with these fires, that he was not seen starting them, and that the evidence of these prior incidents was admitted only for the purpose of showing his propensity to commit the type of crime for which he was then being tried.
Ms. Briggs testified that, on February 9, 1987, apparently after a domestic dispute, she and her children left her house and ran down the street to call the police. When Ms. Briggs and her children returned to the house, she noticed that much of her clothing had been placed in a large pile in their backyard, and had been set on fire. Ms. Briggs testified that, when she left, the clothes were in her closet. Shortly thereafter, the police arrived, and questioned the appellant, who remained inside the house.
About four days later, Ms. Briggs came home to find that another fire had been set in the backyard. This time, both Ms. Briggs's possessions and of her daughter were burned. Ms. Briggs testified that although the appellant was not living there at the time he still had a key to the house.
On March 15, 1987, Ms. Briggs came home shortly after midnight. Thereafter, the appellant drove up in front of the house, sounding the horn of his vehicle. Ms. Briggs testified that she raised her window and told the appellant that she was calling the police, and that he then left. Ms. Briggs further testified that, after she had gone to bed, the appellant telephoned and asked her why she had called the police. After telling the appellant that she called the police because he would not leave her alone, Ms. Briggs took the telephone off the hook. Ms. Briggs testified that, at about 5 a.m., she was awakened by smoke in her bedroom and, realizing that there was a fire, took her children out of the house.
" 'The general rule is that evidence of other crimes not charged in the indictment is inadmissible if its only purpose is to show the bad character, inclination or propensity of the accused to commit the type of crime for which he is being prosecuted.' " Barton v. State, 494 So.2d 943, 952 (Ala.Cr.App. 1986) (citations omitted). See also, C. Gamble, McElroy'sAlabama Evidence, § 69.01(1) (3d ed. 1977). However, evidence of distinct and independent offenses is admissible in the trial of a person accused of a specific crime when its purpose is to establish identity or a single *Page 159 
plan, design, scheme, or system. Dowdell v. State, 480 So.2d 45
(Ala.Cr.App. 1985).
In the case sub judice, identity was very much in question at the appellant's trial, as he denied setting fire to his estranged wife's house, because there were no witnesses who could place him at the house at the time the blaze began. Evidence of the two fires that occurred in February 1987 was properly admissible in the present case as tending to prove that the appellant was the person who set the house fire.
The appellant contends in his brief that he was never charged with the two earlier fires, that no one saw him set them, and therefore that they should not have been allowed into evidence. In support of his argument, the appellant cites Williams v.State, 350 So.2d 708 (Ala. 1977). Initially, this Court notes that, "[i]f the accused's commission of another crime is otherwise competent and admissible under one of the exceptions to the general exclusionary rule, the state may prove his guilt of the other crime by the same kind of evidence — both circumstantial and direct — that would be admissible if the accused were being tried for the other crime." McElroy'sAlabama Evidence, supra, at § 69.02(5). See also, Eslava v.State, 473 So.2d 1143, 1146 (Ala.Cr.App. 1985).
In this case, evidence showed that the clothes burned in the first of the two February 1987 fires had been in a closet in Ms. Briggs's home immediately before the fire, and that the appellant was the only one in the house at that time. Other evidence indicated that, although the appellant was not living in the house at the time of the second fire, he still had a key to the dwelling. Evidence also suggested that the appellant and Ms. Briggs were experiencing serious marital problems when the two fires occurred. In the opinion of this Court, this evidence was sufficient to connect the appellant to the two prior fires.
Moreover, Williams, supra, on which the appellant's argument is based, is readily distinguishable from the present case. InWilliams, the appellant did not deny committing the offense charged; rather, he chose not to testify during his trial. Further, the victim in Williams made a positive identification of the accused at trial, and thus identity was not properly in issue, as it was in the case sub judice.
 III.
The appellant contends that the trial court erred in denying him a continuance to review a third tape that the State had failed to produce prior to his trial. Again, this Court does not agree.
During the hearing on the motion in limine, held prior to the appellant's trial, it was discovered that a third tape existed, and that Ms. Briggs had left the tape in the answering machine when it was returned to Tommy Shirley. Ms. Briggs testified that there "might" have been one conversation between her and the appellant on the tape, but that this conversation occurred only after the appellant had been taken to jail. Shirley testified during the hearing on the appellant's motion in limine that he still had the third tape, but had not listened to it. The district attorney instructed Shirley to get the tape during lunch and give it to the court, and Shirley did so.
The prosecution did not offer any evidence concerning the contents of the third tape during the presentation of its case-in-chief. At the conclusion of the State's case, however, appellant's attorney requested a continuance so that he could review the third tape before deciding whether to allow his client to testify. The district attorney responded by stating that "there is not anything on the tapes," and the court denied the requested continuance. The court did, however, permit the appellant's attorney the opportunity to review the tape overnight; thus, although untimely, the tape was produced.
The decision of whether to grant a continuance in a criminal case is addressed to the sound discretion of the trial court, the exercise of which will not be disturbed on appeal unless clearly abused. Primm v. State, 473 So.2d 547 (Ala.Cr.App. 1984); McConico v. State, 458 So.2d 743 (Ala.Cr.App. 1984). Because the record fails to *Page 160 
show any way in which the denial of the continuance prejudiced the appellant, we find no merit in this argument.
 IV.
The appellant next alleges that the trial court erred in denying his request to dismiss his appointed counsel on the day of his trial and to retain counsel of his own choice.
The record indicates that, after the trial court denied the appellant's motion in limine, his appointed counsel advised the court that the appellant was dissatisfied with the effectiveness of his representation, and that "he wishes to have an opportunity to retain counsel of his own choosing" to further investigate whether counsel did all he should have done to have the two tape recordings suppressed. The court denied the appellant's request, stating that "[i]t's a little late to be making a motion like that."
"[T]he decision whether to remove an appointed counsel and appoint another counsel for defendant is within the sound discretion of the trial court." Crawford v. State,479 So.2d 1349, 1355 (Ala.Cr.App. 1985). See also, Tudhope v. State,364 So.2d 708 (Ala.Cr.App. 1978). Moreover, the right to counsel of one's choice is not absolute, as is the right to assistance of counsel. United States v. Gray, 565 F.2d 881, 887 (5th Cir. 1978), cert. denied, 435 U.S. 955, 98 S.Ct. 1587,55 L.Ed.2d 807 (1978). The right is to choose counsel may not be subverted to obstruct the orderly procedure in the court or to interfere with the fair administration of justice. United States v.Sexton, 473 F.2d 512 (5th Cir. 1973).
It is clear in the present case that the appellant's request was both untimely and unreasonable; a jury had already been selected, and the trial was about to begin. Moreover, it is apparent from the record of the hearing on the motion in limine that counsel performed well and that his failure to obtain suppression of the tape recordings in no way resulted from his alleged lack of effective advocacy. The trial court did not abuse its discretion in denying the appellant's request for change of counsel, and its ruling is due to be affirmed.
 V.
The appellant argues that the trial court erred in admitting into evidence numerous photographs of the burned dwelling taken several days after the fire. The appellant appears to contend that, because they were taken after the police and fire departments had relinquished control of the house, and because they were taken in daylight, and not before dawn when the fire actually occurred, the photographs were not true and accurate representations of the house as it appeared immediately after the fire.
Prior to being admitted into evidence, each of the photographs in issue was properly authenticated, either by the photographer, or by some other person familiar with the subject of the photograph. Further, each of these photographs was relevant either to the source of the fire, or the extent of damage caused by it. Therefore, the foundation required under Alabama law for the admissibility of photographs was satisfied.McElroy's Alabama Evidence, supra, § 123.03(1). See also,Whittington v. State, 432 So.2d 25 (Ala.Cr.App. 1983). Although the photographs in question were taken several days after the fire took place, each photograph was described as accurately depicting the house as it existed just after the fire. While the appellant argues that, to be properly admissible, the pictures should have been taken at night, because the fire occurred before dawn, this argument has previously been considered by this Court, and decided adversely to the appellant. Bell v. State, 475 So.2d 601, 606 (Ala.Cr.App. 1984), aff'd 475 So.2d 609 (Ala. 1985); cert. denied,474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985).
 VI.
The appellant finally argues that the State failed to prove the damages suffered by Ms. Briggs and Auto Owners Insurance Company, and that the trial court erred in the amount of its restitution order. *Page 161 
Because the appellant has failed to preserve this issue for our review, however, this Court is not required to reach the merits of this claim.
On April 14, 1988, a restitution hearing was held in this case. During this hearing, the district attorney offered the insurance adjuster's records as to what had been paid by the insurance company to repair the house. When asked by the Court if he was going to allow these records to come in as an exhibit, the appellant's attorney stated as follows:
 "[DEFENSE COUNSEL]: Your Honor, we would, for the purposes for which the affidavit — for which they speak to the fact that Auto Owners paid this claim in this amount, and this is what it was for.
 "We, of course, do not want it admitted for the fact that it is how much damages there were."
The Court then ruled as follows:
 "THE COURT: This is admitted for the purposes that it was offered for, showing that it was the amount that was paid."
Ms. Briggs also testified at the restitution hearing, stating that she and her children had lost clothing valued at $2,500.00 as a result of the fire. Ms. Briggs further testified that $3,000.00 worth of household furnishings and appliances were destroyed in the blaze. Ms. Briggs testified that these figures were reached based on what it would cost her to replace the lost items.
It is apparent from counsel's cross-examination of Ms. Briggs that the appellant disagreed with her valuation of the lost items. However, at no time during the restitution hearing did the appellant object, generally or specifically, to the damages claimed by Ms. Briggs, or offer what he believed to be a more reasonable appraisal of her losses. While this Court notes that the court took the issue of damages under advisement, and did not enter a restitution order until after the hearing was concluded, we likewise note that the appellant failed to file any objection to the restitution order after it had been entered, such as a motion for reconsideration of damages.
In the present case, no objection was made by the appellant as to the amount of restitution claimed, either before or after the restitution hearing. Although, pursuant to § 15-18-69, Codeof Alabama (1975), an objection is not required to be specific, not even a general objection can be found in the record which would have brought this dispute to the trial court's attention. Pursuant to this Court's decisions in Eddins v. State,501 So.2d 574, 578 (Ala.Cr.App. 1986); and Stork v. State,475 So.2d 622, 623 (Ala.Cr.App. 1984), reversed on other grounds,Ex parte Stork, 475 So.2d 623 (Ala. 1985), the trial court's restitution order is due to be affirmed.
For the reasons set forth above, the judgment of the trial court is correct, and it is due to be affirmed.
AFFIRMED.
All Judges concur.